UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STACEY A. KITTNER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Civil Action No. 09-1245 (GK) |
| | ) |
| ROBERT M. GATES, <u>et</u> <u>al.</u>, | ) |
| | ) |
| Defendants. | ) |
| | ) |

<u>MEMORANDUM OPINION</u>

Plaintiff Stacey A. Kittner brings this action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e <u>et seq.</u>, against Defendant Robert M. Gates in his official capacity as Secretary of Defense.  Kittner also alleges violations of her Fifth Amendment rights under <u>Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics</u>, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), against several Department of Defense employees sued in their individual capacities.  The individually sued Defendants include Deborah Monroe, Deputy Chief, Directorate for Analysis, Office of Counter-Proliferation Technology ("CPT"), Defense Intelligence Agency ("DIA"); Col. William Russel Strosnider, Chief, Operating Base National Capitol Region ("OBNCR"), DIA;  Capt. William S. Gieckel, Acting Chief, OBNCR; Scott Darren LaCoss, Chief of Controlled Operations, OBNCR; Brad Ahlskog, Division Chief, CPT; and Claudia Caslow, Korean Team Chief, CPT.

This matter is presently before the Court on Defendants' Motion to Dismiss in Part [Dkt. No. 8] pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6)[1] and Defendants' Motion to Stay Discovery [Dkt. No. 21]. Upon consideration of the Motion, Opposition, Reply, and the entire record herein, and for the reasons set forth below, the Motion to Dismiss in Part is **granted**, and the Motion to Stay Discovery is **denied** as moot.

# I. BACKGROUND[2]

## A. Facts

### 1. Plaintiff's Allegations of Harassment, Discrimination, and Retaliation

Kittner was hired by the DIA in 2004 as an Intelligence Officer specializing in counter-proliferation issues.[3] Pl.'s Opp'n

---

[1] The Motion to Dismiss also alleges that Kittner violated Fed. R. Civ. P. 12(b)(5) by failing to serve the Amended Complaint upon Defendants Monroe, Strosnider, LaCoss, and Gieckel. However, Defendants acknowledge that "the time in which service can be made on these defendants [had] not yet expired" when the Motion was filed. Defs.' Mot. at 21 n.2. Because Plaintiff has since timely served the Amended Complaint on all named Defendants, see Docket Number 12, this argument is no longer viable.

[2] For purposes of ruling on a motion to dismiss, the factual allegations of the Complaint must be presumed to be true and liberally construed in favor of the Plaintiff. Aktieselskabet AF 21. November 2001 v. Fame Jeans Inc., 525 F.3d 8, 17 (D.C. Cir. 2008). Therefore, the facts set forth herein are taken from Plaintiff's Amended Complaint unless otherwise noted.

[3] Plaintiff had a substantial educational and professional background before joining DIA. She earned a Bachelor of Science from Rensselaer Polytechnic Institute and a Master of International Affairs from Australian National University. In addition, she participated in a Ph.D.-candidate program in geophysics at California Institute of Technology and attended multiple nuclear training, biological, and microbiology courses at the Department of Energy and Defense Threat Reduction Agency. Kittner also worked for

at 2 n.3 [Dkt. No. 13]. In 2005, she was assigned to a three-year rotation in the DIA's OBNCR, which is located in Maryland. There, Kittner served as a nuclear Subject Matter Expert, providing scientific and technical expertise and support, primarily to OBNCR Detachment 420. Am. Compl. ¶ 14 [Dkt. No. 2].

In November 2006, Kittner traveled to the Asia-Pacific region on a five-day, two-person temporary assignment. The supervisor for the operation was Major "Erich J.K." ("Maj. K"), a Controlled Operations Officer from the DIA Human Intelligence Office ("DIA/HUMINT") working in Detachment 420. Id. ¶ 17. Kittner and Maj. K stayed in the same hotel, on Maj. K's instructions, and she was given a key to Maj. K's suite. Id. ¶ 18.

Operational meetings were held in Maj. K's suite on November 8, 9, and 10, 2006. Kittner was required to remain in the suite with Maj. K after the meetings to finish work, as she needed to use a computer with encryption software located there.

On the first night of the trip, while alone with Maj. K in his hotel suite after finishing work, Kittner alleges that Maj. K made sexual advances toward her, which she responded to by repeatedly telling him "no". Id. at 23. Kittner further alleges that Maj. K drugged the wine that he poured for her that night, which caused her to lose consciousness, and then raped her. Id. at ¶ 27. On each

---

BAE Systems, the Center for Defense Information, and Schlumberger Wireline and Testing before joining DIA. Am. Compl. ¶ 5.

of the following two nights, Maj. K again made advances, which Plaintiff successfully rejected. Id. at ¶¶ 28-29. After returning to the United States, Maj. K telephoned Kittner numerous times from November 11 to 20, 2006, inviting her to dinner and suggesting they meet to talk outside the office. She declined to meet him. Id. at ¶ 30.

The following week of November 13, 2006, Plaintiff reported the incident to three female CPT managers at DIA headquarters, including Defendant Deborah Monroe, Kittner's reviewing officer at OBNCR and her second-level supervisor. She also reported the incident to Defendant William Russell Strosnider, her first-level supervisor, on Friday, November 17, 2006. Strosnider discouraged Kittner from going to the DIA's Equal Opportunity ("EO") office, and suggested that he could conduct a "Commander's Inquiry" instead, which would "keep the matter within DIA/HUMINT." Id. at ¶ 33. He also instructed Kittner to continue working with Maj. K to finish the project. Despite what he told Kittner, Strosnider never conducted such an Inquiry, and in fact lacked the authority to do so. Id. at n.4.

Later that month, Kittner also contacted the DIA's EO office to report Maj. K's conduct during the trip. On December 12, 2006, she submitted a memorandum to the EO office describing Maj. K's behavior, and gave a copy to Defendant Strosnider.

After she reported Maj. K's misconduct, Kittner alleges that Defendants engaged in a number of retaliatory and discriminatory acts. From November 2006 onward, a documented history of positive comments and praise for her work ended, and was replaced with continual criticism. Id. at ¶¶ 16, 45. She began to be treated in an unprofessional manner, including being yelled at by Defendant LaCoss and other supervisors and spoken to in "a demeaning tone" that made co-workers uncomfortable. See Id. at ¶¶ 65, 79-80. She also found herself no longer invited to meetings she had been invited to before, and reprimanded for attending a panel to which she had been invited. Id. at ¶ 59.

Kittner also received negative comments from her supervisors relating to the incident with Maj. K. For instance, on November 20, 2006, and again later that same month, Defendant Strosnider told her that she was unsuitable for working in operations because she should have been able to prevent Maj. K from making advances. In January 2007, Strosnider excused Maj. K's behavior by telling Kittner that Maj. K "was just being a guy," and warned her "against trying to advance an agenda by tying it to her complaint against Maj. K." Id. at ¶ 35. On January 7, 2007, Defendant Monroe told Kittner that management had checked up on her, that she was immature for her age, and that she should not be allowed to work in operations.

In March 2007, Defendant Scott Darren LaCoss, OBNCR Chief of Controlled Operations and Plaintiff's first-level supervisor, prohibited Kittner from going on any temporary operational assignments related to Detachment 420 or to continue supporting any Controlled Operation. When Kittner said that she was supporting six Controlled Operations, LaCoss, along with Defendant Strosnider, ordered that two managers be present at all her meetings. Plaintiff alleges that this directive singled out and humiliated her, as no male officer was required to be escorted by his supervisors to meetings.

Plaintiff contends that after Maj. K was removed from DIA in April 2007, the retaliation "increased dramatically." Id. at ¶ 52. On April 27, 2007, Kittner received a counseling letter which stated that she had given inappropriate guidance on an issue outside her area of responsibility, and that she had been counseled multiple times about providing inappropriate guidance. On June 15, 2007, she received a reprimand in person, and, on June 24, 2007, she was given a list of wrongdoings. In these, and in later reprimands, supervisors criticized Plaintiff for deterioration in her job performance and a tendency to exceed the scope of her job duties. She denies that the reprimands were consistent with the facts, and alleges they were actually given in retaliation for reporting Maj. K's misconduct. Id. at ¶ 56.

Between mid-April and late August 2007, Kittner was told by supervising officers that she must obtain written permission for any work in support of Controlled Operations. This requirement also singled her out and humiliated her, as no other Subject Matter Expert was required to obtain such written permission. Id. at ¶ 61. Additionally, she received a written reprimand on August 2, 2007 for asking Maj. K's successor for such written permission, which she alleges unfairly penalized her for merely following the orders she had received. Id. at ¶ 62.

Next, Defendant Geickel told Kittner in November 2007 that she was to cease communication with Detachment 420, and that she was not allowed to accompany Maj. K's replacement on a temporary operations assignment on which he had asked her to accompany him. Id. at ¶ 67. On December 13, 2007, she received a Letter of Reprimand signed by Defendant Gieckel, was removed from her position, and was transferred to a less desirable job in CPT. Id. at ¶ 75. Defendants Claudia Caslow and Brad Ahlskog, respectively, became her new reviewing officer and second-level supervisor. Defendant Monroe also remained in Kittner's chain of command in her new position.

In her new position, Kittner has continued to experience harassment, retaliation, and discrimination. Id. at ¶ 78. She was prohibited from interacting with colleagues in the intelligence community without prior permission, excluded from meetings, and

denied training. Id. Additionally, Ahlskog announced that employees must gain authorization before interacting with Kittner, and that it should be reported to him if Kittner approached anyone in the office. Id. at ¶ 80.

Finally, Kittner began to receive monthly reprimands from her supervisors, including two Memoranda of Counseling dated August 18 and September 11, 2008, a Letter of Reprimand on October 9, 2008, and two emails on November 9 and December 23, 2008. These reprimands cited her for various instances of professional misconduct including circumventing her superiors, ignoring and failing to follow directions, and complaining about being underutilized. Id. at ¶¶ 84-85, 88-91 & 93-95.

### 2.    Equal Opportunity Office Action

Throughout the course of these events, Kittner met with EO office counselors several times to report her treatment. In addition to her initial 2006 contact, she met with a counselor in early February 2007 to discuss Maj. K's behavior and Defendants Strosnider and Monroe's comments regarding her unsuitability for work in operations. She met again with EO officers at least four times between March and September of 2007 to report retaliation and harassment.

On October 18, 2007, Kittner acknowledged and signed a Notice of Rights and Responsibilities from the EO counselor. In the following months, she continued to make frequent reports to the EO

office regarding her supervisors' behavior: on November 15, 2007, she reported further retaliation and, in December 2007, she reported her removal and transfer from her job and the December 13, 2007 Letter of Reprimand. Id. ¶ 38.

On February 13, 2009, Kittner filed a formal complaint with the EO office. Kittner attributes the delay in filing to her belief that Defendant Strosnider was pursuing her claim through a Commander's Inquiry. She also continued to report to the EO Office the harassment/retaliation she encountered in her new position.

On April 10, 2009, the EO office issued a Final Agency Decision ("FAD") on Plaintiff's claims arising from her treatment in the period up to and including her transfer. The FAD rejected Kittner's claims of sexual assault and reprisal. Kittner claims that testimony from her witnesses was ignored and key information was omitted, while hearsay and false statements from her supervisors were considered. Id. at ¶¶ 98-100. The EO office also created a second case file number for the complaints arising from Kittner's treatment in her new position, but failed to take any final action on it within 180 days.

**B.  Procedural History**

On July 7, 2009, Kittner filed a Complaint in this Court alleging the same claims addressed in the FAD under Title VII and the First and Fifth Amendments. On August 17, 2009, she filed an Amended Complaint to incorporate the claims raised in the second EO

case [Dkt. No. 2]. In the Amended Complaint, Kittner alleges that Defendants violated Title VII by subjecting her to disparate treatment and disparate impact (Count I), sexual harassment related to Maj. K's actions (Count II), sex-based harassment at her workplace resulting from reporting Maj. K's actions (Count III), a hostile work environment (Count IV), and reprisal (Count V). She also alleges <u>Bivens</u> claims for deprivations of her Fifth Amendment liberty and procedural due process rights (Count VI) and deprivations of her First and Fifth Amendment rights in violation of 42 U.S.C. §§ 1985 and 1986 (Count VII).

Defendants move to dismiss Counts VI and VII of the Amended Complaint and, in a separate motion, to stay discovery from the individually sued Defendants pending resolution of the Motion to Dismiss in Part. In her Opposition to the Motion to Dismiss in Part, Kittner agreed to "voluntarily dismiss, without prejudice, her claims under 42 U.S.C. §§ 1985 and 1986 (Count VII of the Amended Complaint)." Opp'n at 2 n.1. Thus, the only remaining question before the Court is whether Count VI of the Amended Complaint should be dismissed under Rules 12(b)(1), 12(b)(2), or 12(b)(6).

## II. Standard of Review

Under Rule 12(b)(1), the plaintiff bears the burden of proving by a preponderance of the evidence that the Court has subject matter jurisdiction to hear her case. See <u>Jones v. Exec. Office of</u>

President, 167 F. Supp. 2d 10, 13 (D.D.C. 2001). In reviewing a motion to dismiss for lack of subject matter jurisdiction, the Court must accept as true all of the factual allegations set forth in the Complaint; however, such allegations "will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." Wilbur v. CIA, 273 F. Supp. 2d 119, 122 (D.D.C. 2003) (citations and quotations omitted). The Court may consider matters outside the pleadings. See Herbert v. Nat'l Acad. of Sciences, 974 F.2d 192, 197 (D.C. Cir. 1992). The Court may also rest its decision on the Court's own resolution of disputed facts. Id.

On a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the plaintiff bears the burden of establishing personal jurisdiction over each defendant. Crane v. New York Zoological Soc., 894 F.2d 454, 456 (D.C. Cir. 1990). In order to satisfy this burden, a plaintiff must establish the Court's jurisdiction over each defendant through specific allegations in her complaint. Kopff v. Battaglia, 425 F.Supp.2d 76, 80-81 (D.D.C. 2006). Additionally, the plaintiff cannot rely on conclusory allegations; rather, she must allege the specific facts on which personal jurisdiction is based. First Chicago Int'l v. United Exchange Co., 836 F.2d 1375, 1378 (D.C. Cir. 1988).

Under Rule 12(b)(6), a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face" and to

"nudge[] [his or her] claims across the line from conceivable to plausible." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "[A] complaint [does not] suffice if it tenders naked assertions devoid of further factual enhancement." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (internal quotations omitted) (citing Twombly, 550 U.S. at 557). Instead, the complaint must plead facts that are more than "merely consistent with" a defendant's liability; "the pleaded factual content [must] allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1940.

"[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Twombly, 550 U.S. at 563. Under the standard set forth in Twombly, a "court deciding a motion to dismiss must . . . assume all the allegations in the complaint are true (even if doubtful in fact) . . . [and] must give the plaintiff the benefit of all reasonable inferences derived from the facts alleged." Aktieselskabet AF 21. November 2001 v. Fame Jeans Inc., 525 F.3d 8, 18 (D.C. Cir. 2008) (internal quotations marks and citations omitted); see also Tooley v. Napolitano, 586 F.3d 1006, 1007 (D.C. Cir. 2009) (declining to reject or address the government's argument that Iqbal invalidated Aktieselskabet).

## III. Analysis

Defendants first argue that Count VI must be dismissed because Title VII provides the exclusive remedy for allegations of discrimination and retaliation in federal employment. Second, Defendants argue that special factors counsel hesitation in the creation of a <u>Bivens</u> remedy for Kittner's constitutional claims. Finally, Defendants argue that, even if Kittner can bring her <u>Bivens</u> claims, the Defendants sued in their individual capacities are entitled to qualified immunity.

### A.   Title VII and the CSRA Counsel Hesitation in Creating a <u>Bivens</u> Remedy for Plaintiff's Constitutional Claims.

Defendants rely on <u>Brown v. Gen. Serv. Admin.</u>, 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976), to argue that Title VII preempts Kittner's constitutional claim. <u>Brown</u> held that Title VII "provides the exclusive judicial remedy for claims of discrimination in federal employment." <u>Id.</u> at 834. As a general rule, then, "when a plaintiff alleges facts that are actionable under Title VII and for which Title VII provides a remedy, Title VII preempts virtually all other federal causes of action." <u>Rochon v. FBI</u>, 691 F.Supp. 1548, 1555 (D.D.C. 1988).

Plaintiff responds by citing <u>Neely v. Blumenthal</u>, 458 F.Supp. 945, 957 (D.D.C. 1978), where the District Court held that <u>Brown</u>'s preemption rule is inapplicable to <u>Bivens</u> claims for damages brought against individual officers accused of discrimination. <u>Neely</u> held that "<u>Brown</u>'s preemption rule stands circumscribed to

the extent of cutting off only official remedies for federal employment discrimination," and not judicially created remedies. Id. at 954. In reaching this conclusion, Judge Sirica relied on the fact that the issue was never raised in Brown. However, it does not follow logically that the absence of the issue in Brown compels the conclusion that the Brown holding is not applicable to the facts in Neely.

It would certainly appear that Neely has not withstood the test of time nor the thrust of new caselaw, considering that the opinion, which was issued over thirty years ago, has never been cited by any federal court and is not consistent with the teachings of Schweiker v. Chilicky, 487 U.S. 412, 108 S.Ct. 2460; Bush v. Lucas, 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983); and Spagnola v. Mathis, 859 F.2d 223, 226 (D.C. Cir. 1988) (en banc). Our Court of Appeals has subsequently ruled that Brown's preemption rule would apply to preempt a plaintiff's common-law state tort claims alleging discrimination against individual federal officials. Ramey v. Bowsher, 915 F.2d 731, 734 (D.C. Cir. 1990) ("[T]o the extent that Ramey attempts to recast his tort claims against the supervisors as pure discrimination claims, they are in any event barred by the exclusive character of the Title VII remedy."). Moreover, in a far more recent case than Neely, a District Court Judge in this Circuit has concluded that a pro se plaintiff's Bivens claims against her supervisors, alleging

constitutional violations based on retaliation for her prior EEO activity, were preempted by Title VII under Brown. Rogler v. Biglow, 610 F.Supp.2d 103 (D.D.C. 2009). For all these reasons, the Court does not find Neely persuasive, either on the basis of its own internal reasoning or the subsequent development of the law in this Circuit and the Supreme Court.

Thus, Plaintiff's constitutional claims alleging discrimination are preempted by Title VII under Brown. Count VI of the Amended Complaint alleges that the individually named Defendants violated Kittner's Fifth Amendment "liberty and procedural due process rights" by engaging in "improper acts which negatively altered Plaintiff's employment status and in doing so stigmatized Plaintiff and impugned her reputation . . . ." Am. Compl. ¶¶ 189-91. In support, Kittner points to Defendants' actions in:

> [R]equiring her to have two managers present for all her meetings with anyone in Controlled Operations; . . . prohibiting Plaintiff from going on [Temporary Duty Assignments] in support of Controlled Operations, Detachment 420; . . . deciding that Plaintiff was unsuitable for operations because she was immature and should have been able to prevent Maj. K's advances; . . . giving her a referral to the Office of Employee Assistance alleging a recent deterioration in her performance and interactions with others at work; . . . prohibiting Plaintiff from supporting or communicating with Controlled Operations, Detachment 420 . . . ; . . . yelling at her in a loud voice with a raised hand and an angered look; . . . falsely accusing Plaintiff of frequently contacting Maj. K's replacement at

> home, saying the replacement wanted to have
> sex with her and being paranoid; . . .
> removing Plaintiff from her position in OBNCR;
> . . . transferring Plaintiff to a less
> desirable job in CPT; . . . restricting
> Plaintiff from performing her job while
> continuing to demean and disparage her; and .
> . . forcing Plaintiff to endure more negative
> treatment, more Counseling Letters, critical
> e-mails and another Letter of Reprimand.

Id. at ¶ 190.

As Defendants point out, "[t]he specific claims set forth in
Count VI are the very same claims that form the basis of
plaintiff's Title VII claims in Counts I-V." Defs.' Mot. at 7.
Plaintiff's constitutional claims therefore clearly do challenge
the same acts of harassment, discrimination, and retaliation in
Counts I-V for which Title VII provides the exclusive remedy. Thus,
the claims in Count VI alleging the same discrimination,
harassment, and retaliation underlying Counts I-V are **dismissed.**[4]

Kittner argues, however, that the factual predicate of her
constitutional claims is separate from the allegations of
discrimination, harassment, and retaliation underlying her Title
VII claims. Even if this argument is credited, there can be no
doubt that the acts and omissions alleged in Count VI relate to the

---

[4] Even if Brown's preemption rule did not apply to
Kittner's Bivens claims, under the special factors analysis, the
outcome would be the same. As Neely itself recognized, given the
comprehensiveness of Title VII's remedial scheme, there is "no
sound reason for treating the claims separately by implying a
damage cause of action not authorized by Congress." Neely, 458
F.Supp. at 960 (declining to extend Bivens remedy to discrimination
claims brought by federal employee).

actions Defendants have taken regarding Kittner in the employment setting. That fact raises a separate issue: whether the remedial scheme established in the Civil Service Reform Act, 5 U.S.C. § 1101, et seq ("CSRA"), should preclude Kittner from bringing her Bivens claim.

In Bivens, the Supreme Court emphasized the limited nature of the judiciary's power to make policy concerning remedies for alleged constitutional violations. Thus, when Congress has declared another remedy equally effective, or when "special factors counselling hesitation" are present, the judiciary should decline to exercise its discretion in creating damages remedies against federal officials in their individual capacity. Bivens, 403 U.S. at 397, 91 S.Ct. at 2005; accord Bush, 462 U.S. 367, 103 S.Ct. 2404; Spagnola, 859 F.2d at 226.

The Supreme Court expanded upon the Bivens special factors analysis in Bush v. Lucas, where it held that a federal employee could not obtain money damages under the First Amendment for an adverse personnel action taken against him in alleged retaliation for critical comments he made about his employer to the news media. The Court concluded that the legislation, executive orders, and Civil Service Commission regulations governing federal employment claims constituted an "elaborate, comprehensive scheme" that was a special factor counseling against recognition of a Bivens remedy. 462 U.S. at 388-90. In addition, the Court made clear that the

proper question for courts confronted with <u>Bivens</u> claims is not whether a judicial remedy is needed for a wrong that would otherwise go unredressed, but whether an existing "elaborate remedial system . . . constructed step by step, with careful attention to conflicting policy considerations, should be augmented by the creation of a new judicial remedy." <u>Id.</u> at 388.

Subsequent to <u>Bush</u>, the Supreme Court declined to extend a <u>Bivens</u> remedy to claims covered by the Social Security Act, even though the Act did not provide the type of relief--money damages-- sought by the plaintiffs. <u>Chilicky</u>, 487 U.S. 412, 108 S.Ct. 2460. Our Court of Appeals, reading <u>Bush</u> and <u>Chilicky</u> together, explained this special-factor line of analysis as follows:

> [C]ourts must withhold their power to fashion damages remedies when Congress has put in place a comprehensive system to administer public rights, has 'not inadvertently' omitted damages remedies for certain claimants, and has not plainly expressed an intention that the courts preserve <u>Bivens</u> remedies. In these circumstances, it is not for the judiciary to question whether Congress' 'response [was] the best response, [for] Congress is the body charged with making the inevitable compromises required in the design of a massive and complex . . . program.'

<u>Spagnola</u>, 859 F.2d at 228 (quoting <u>Chilicky</u>, 487 U.S. at 427-29, 108 S.Ct. at 2470-71). Consequently, this Circuit has declined to extend <u>Bivens</u> remedies to constitutional claims arising from wrongs covered by Title VII, the Privacy Act, and the Civil Service Reform Act, among others. <u>See</u> <u>Neely</u>, 458 F.Supp. at 960 (Title VII),

<u>Wilson v. Libby</u>, 535 F.3d 697, 704-10 (D.C. Cir. 2008) (Privacy Act); <u>Spagnola</u>, 859 F.2d at 229-30 (Civil Service Reform Act).

Most recently, the Supreme Court's decision in <u>Wilkie v. Robbins</u>, 551 U.S. 537, 127 S.Ct. 2588, 168 L.Ed.2d 389 (2007), set forth the framework for analyzing <u>Bivens</u> claims as follows:

> In the first place, there is the question whether any alternative, existing process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages. But even in the absence of an alternative, a <u>Bivens</u> remedy is a subject of judgment: 'the federal courts must make the kind of remedial determination that is appropriate for a common-law tribunal, paying particular heed, however, to any special factors counselling hesitation before authorizing a new kind of federal litigation.'

<u>Id.</u> at 550 (quoting <u>Bush</u>, 462 U.S. at 378, 103 S.Ct. 2404).

In <u>United States v. Fausto</u>, 484 U.S. 439, 455, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988), the Supreme Court concluded that the CSRA "established a comprehensive system for reviewing personnel action taken against federal employees." 5 U.S.C. § 2302 defines "prohibited personnel practices" expansively to include the "tak[ing] or fail[ure] to take any ... personnel action if the taking or failure to take such action violates any law, rule, or regulation implementing, or directly concerning, the merit system principles contained in section 2301 of this title." 5 U.S.C. § 2302(b)(12) (2009). One specific, very broadly worded merit system principle provides that "[a]ll employees . . . should receive fair

and equitable treatment in all aspects of personnel management ... with proper regard for their ... constitutional rights." 5 U.S.C. § 2301(b)(2) (2009).

Given this statutory language, and given the Supreme Court's analysis of the civil service system in Bush v. Lucas, our Court of Appeals has concluded that "'special factors' preclude the creation of a Bivens remedy for civil service employees . . . who advance constitutional challenges to federal personnel actions." Spagnola, 859 F.2d at 225 n.3, 230. This is true even when the CSRA affords "no remedy whatsoever" to a plaintiff. Id. at 228-29.

The CSRA defines "personnel action" to include "a detail, transfer, or reassignment" and "any other significant change in duties, responsibilities, or working conditions." 5 U.S.C. § 7302(a) (2009). Defendants' decisions to transfer Kittner to an allegedly inferior position and to restrict her responsibilities thus qualify as "personnel actions" covered by the CSRA. The Court therefore concludes that the CSRA is a "special factor counseling hesitation" which precludes creation of a Bivens remedy for Kittner's constitutional claims.[5] See Gerlich v. United States

---

[5] None of the cases relied on by Plaintiff involve federal employees challenging personnel actions subject to the CSRA, and so are easily distinguishable. Carlson v. Green, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980), was brought by the administratrix of the estate of a deceased federal prisoner and alleged violations of the deceased prisoner's due process, equal protection, and Eighth Amendment rights. Grichenko v. United States Postal Serv., 524 F.Supp. 672 (E.D.N.Y. 1981), was brought by a federal postal worker, but the plaintiff's claims, which arose from an alleged on-

Dep't of Justice, 659 F.Supp.2d 1, 8-12 (D.D.C. 2009) (dismissing plaintiff's Bivens claim, which challenged federal personnel action, as precluded by CSRA); Runkle v. Gonzales, 391 F.Supp.2d 210, 235 (D.D.C. 2005) (same); Kalil v. Johanns, 407 F.Supp.2d 94, 101 (D.D.C. 2005) (same). See also Stewart v. Evans, 275 F.3d 1126, 1130 (D.C. Cir. 2002) (where warrantless search by federal employer was not a "personnel action" under the CSRA, and so could be challenged through a Bivens claim); Weaver v. Bratt, 421 F.Supp.2d 45 (D.D.C. 2006) (where warrantless search and agency's failure to investigate claim, provide opportunity to be heard, or give notice of right to appeal, none of which qualified as "personnel actions" under the CSRA, could be challenged through a Bivens claim).

Given the dismissal of Count VI of the Amended Complaint as explained, supra, there is obviously no need to consider whether the individually sued Defendants are entitled to qualified immunity. Because the only remaining claims in the Amended Complaint are brought under Title VII, and because the only proper defendant in a Title VII suit is the head of the federal agency,

---

the-job injury, were subject to the Federal Employees' Compensation Act, not the CSRA. Finally, the plaintiff in Kartseva v. Dep't of State, 37 F.2d 1524 (D.C. Cir. 1994), was employed by a private contractor, not a federal agency.

In general, the cases cited by Plaintiff in her Opposition are not persuasive. A number were decided by district courts in other Circuits which, aside from being not binding on this Court, were at times inconsistent with this Circuit's precedent. In addition, at least one case cited by Plaintiff supported Defendant's position.

see 42 U.S.C. § 2000e-16(c), Defendants Monroe, Strosnider, LaCoss, Gieckel, Ahlskog, and Caslow are **dismissed** as defendants in this case. Because the individually sued Defendants no longer remain in the case, Defendants' Motion to Stay Discovery against Defendants Monroe, Strosnider, LaCoss, Gieckel, Ahlskog, and Caslow is **denied** as moot.

**IV. CONCLUSION**

For the reasons set forth above, the Defendants' Motion to Dismiss in Part under Federal Rule of Civil Procedure 12(b)(1) is **granted**. Count VI of the Amended Complaint is therefore **dismissed**, and Defendants Monroe, Strosnider, LaCoss, Gieckel, Ahlskog, and Caslow are **dismissed** as defendants. Defendants' Motion to Stay Discovery against Defendants Monroe, Strosnider, LaCoss, Gieckel, Ahlskog, and Caslow is **denied** as moot. An Order will accompany this Memorandum Opinion.


April 28, 2010                        /s/_____
                                      Gladys Kessler
                                      United States District Judge


<u>Copies to</u>: attorneys on record via ECF