**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
**STACEY A. KITTNER**,            )
                                  )
         **Plaintiff**,           )
                                  )
     v.                           )    **Civil Action No. 09-1245 (GK)**
                                  )
**ROBERT M. GATES**, <u>et</u> <u>al.</u>,    )
                                  )
         **Defendants**.          )
_____)

## <u>MEMORANDUM OPINION</u>

Plaintiff Stacey A. Kittner brings this action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e <u>et</u> <u>seq.</u> ("Title VII"), against Defendant Robert M. Gates in his official capacity as Secretary of Defense. Kittner also alleges violations of her Fifth Amendment rights under <u>Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics</u>, 403 U.S. 388, 91 S. Ct. 1999 (1971), against several Department of Defense employees sued in their individual capacities. The individually sued Defendants include Deborah Monroe, Deputy Chief, Directorate for Analysis, Office of Counter-Proliferation Technology ("CPT"), Defense Intelligence Agency ("DIA"); Col. William Russel Strosnider, Chief, Operating Base National Capitol Region ("OBNCR"), DIA; Capt. William S. Gieckel, Acting Chief, OBNCR; Scott Darren LaCoss, Chief of Controlled Operations, OBNCR; Brad Ahlskog, Division Chief, CPT; and Claudia Caslow, Korean Team Chief, CPT.

This matter is presently before the Court on Plaintiff's Motion for Reconsideration (May 26, 2010) ("Plaintiff's Mot.") [Dkt. No. 32] of the Court's April 28, 2010 Order [Dkt. No. 27] granting Defendants' Motion to Dismiss Plaintiff's <u>Bivens</u> claim against the individually sued Defendants. Upon consideration of the Motion, Opposition, Reply, and the entire record herein, and for the reasons set forth below, Plaintiff's Motion for Reconsideration is **denied.**

## I. Standard of Review[1]

Plaintiff properly brings her Motion for Reconsideration under Federal Rules of Civil Procedure 59(e) and 60(b). As the moving party, Plaintiff has the burden of demonstrating that relief under either of these Rules is warranted. <u>Messina v. Krakower</u>, 439 F.3d 755, 758-59 (D.C. Cir. 2006); <u>Murray v. District of Columbia</u>, 52 F.3d 353, 355 (D.C. Cir. 1995).

It is well-established that a motion for reconsideration is committed to the sound discretion of the court. <u>Murray</u>, 52 F.3d at 355. The granting of such a motion is, however, an unusual measure, occurring in extraordinary circumstances. <u>Firestone v. Firestone</u> 76 F.3d 1205, 1208 (D.C. Cir. 1996)(per curiam); <u>Anderson v. District of Columbia</u>, 72 F.3d 166, 167-68 (D.C. Cir. 1995) (per curiam).

---

[1] The factual background and procedural history of this case were fully detailed in this Court's April 28, 2010 decision, <u>Kittner v. Gates</u>, 708 F. Supp. 2d 47 (D.D.C. 2010). For purposes of this opinion, familiarity with these facts is assumed.

The court will entertain a motion for reconsideration only "where sufficient grounds for disturbing the finality of the judgment" are shown. <u>Smalls v. United States</u>, 471 F.3d 186, 191 (D.C. Cir. 2006) (citations omitted). In particular, such a motion "'need not be granted unless the district court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" <u>Messina</u>, 439 F.3d at 758 (quoting <u>Firestone</u>, 76 F.3d at 1208).

**II. Analysis**

Plaintiff urges the Court to reconsider and vacate its April 28, 2010 Order on the grounds that new evidence obtained from the Government demonstrates that the Court's dismissal of Plaintiff's <u>Bivens</u> claim against the individually sued Defendants will result in manifest injustice. Plaintiff's Mot. 2. Plaintiff argues that various new documents produced by the Government on April 13, 2010, after completion of briefing of Defendants' Motion to Dismiss, demonstrate that "the individual Defendants, acting under the color of law, exceeded the scope of their employment by intentionally and improperly engaging in unlawful and conspiratorial acts such as making false allegations, and perpetuating allegations they knew to be false, in an effort to prevent Plaintiff . . . from doing her job." <u>Id.</u> at 7.

As recounted by Plaintiff, the new evidence strongly implicates the individually sued Defendants in discriminatory and retaliatory actions aimed at limiting Plaintiff's employment opportunities. Nonetheless, under applicable case law, Plaintiff's new evidence does not entitle her to a renewed Bivens claim against these parties.[2]

In order to support a motion for reconsideration under Rule 60(b), Plaintiff's new evidence must meet four requirements: (1) it "must have been in existence at the time of trial" [in this case at the time of the Court's April 28, 2010 Order]; (2) it "must be such that if [sic] was not and could not by the exercise of due diligence have been discovered in time to present it in the original proceeding;" (3) it must not be "merely cumulative or impeaching;" and (4) it "must be admissible and credible, and of such a material and controlling nature as will probably change the outcome." Canady v. Erbe Elektromedizin GmbH, 99 F. Supp. 2d 37, 44 (D.D.C. 2000) (citations omitted).

As it is undisputed that the new evidence was in existence during the relevant time period, and that Plaintiff could not have

---

[2] The new evidence includes, for example, documentation suggesting that the individually sued Defendants took actions to transfer Plaintiff from her previous position at OBNCR and to restrict employment opportunities available to Plaintiff both before and after her transfer, in retaliation for her decision to report Maj K., her former supervisor, for sexual harassment. Plaintiff's Mot. 4-7; Plaintiff's Reply Memorandum to Defendants' Opposition to Plaintiff's Motion for Reconsideration, 3-6 (July 1, 2010) ("Plaintiff's Reply") [Dkt No. 40].

otherwise obtained it by due diligence in time to include it in briefing on Defendants' Motion to Dismiss, Plaintiff's proffered evidence satisfies the first two Canady requirements. However, the new evidence fails to satisfy the remaining two prongs of Canady's four-part test. As the Government correctly argues, Plaintiff's new evidence is merely cumulative and corroborative of the factual allegations this Court dismissed in its April 28, 2010 Order and that it assumed to be true for purposes of rendering that decision. See April 28, 2010 Memorandum Opinion 2 n.2 ("April 28, 2010 Mem. Op.")[Dkt. No. 28]. In light of these circumstances, Plaintiff's new evidence cannot change the outcome of the Court's April 28, 2010 Order dismissing her Bivens claim against the individually sued Defendants.

Consequently, because the new evidence fails to meet the last two requirements of Canady, the Court **denies** Plaintiff's Motion for Reconsideration on the basis of her new evidence.

Plaintiff's remaining arguments in support of her Motion for Reconsideration fall into two categories: (1) arguments relating to Title VII preemption of Plaintiff's Bivens claim; and (2) arguments relating to Plaintiff's need to take discovery from Defendants in their individual capacity.

### A. Title VII Preemption

#### 1. Plaintiff Failed to Present Her Preemption Argument When Opposing Defendants' Motion to Dismiss

Plaintiff argues for the first time that Title VII preemption is inapplicable where, as here, evidence demonstrates that the individually sued Defendants acted unlawfully and outside the scope of their employment. Plaintiff's Mot. 12. As Plaintiff concedes, however, her preemption theory is premised, in part, on allegations contained in her Amended Complaint against the individually sued Defendants. Id. Consequently, her argument could have been, but was not, included in her briefing on Defendants' Motion to Dismiss. A motion for reconsideration may not, however, be used to raise arguments or defenses that could have been advanced during the original proceeding. Kattan v. District of Columbia, 995 F.2d 274, 276 (D.C. Cir. 1993). Because Plaintiff had the opportunity to, but did not, raise this preemption argument in briefing on the Motion to Dismiss, she has waived it and cannot raise it at this time.[3]

---

[3] In her Reply brief, Plaintiff denies that she is presenting a new Bivens theory, but rather claims she is simply further supporting her previously-advanced theory, contained in paragraphs 189-191 of her Amended Complaint, "that the individual Defendants are liable to her under Bivens by negatively altering her employment status and impugning her reputation." Plaintiff's Reply 10. Contrary to Plaintiff's characterization, however, there are no allegations in these paragraphs of the Amended Complaint that Defendants acted outside the scope of their employment, nor can it be inferred that the claims contained in these paragraphs, alleging that Plaintiff's employment status and reputation were negatively affected by Defendants' actions, constitute allegations that Defendants necessarily exceeded the scope of their employment by
(continued...)

On this basis alone, Plaintiff's Title VII preemption theory is insufficient to sustain her Motion for Reconsideration.

### 2. Title VII Preempts Plaintiff's Bivens Claim

Plaintiff has also failed to present any case law substantiating her argument that Title VII does not foreclose a Bivens claim brought against federal employees acting unlawfully and outside the scope of their employment. Moreover, applicable case law does establish several principles that do foreclose Plaintiff's new theory as a basis for reviving her Bivens action.

First, in Brown v. General Services Administration, 425 U.S. 820, 835, 96 S. Ct. 1961 (1976), the Supreme Court held that Title VII "provides the exclusive judicial remedy for claims of discrimination in federal employment." In light of this precedent, our Court of Appeals "has repeatedly held that federal employees may not bring suit under the Constitution for employment discrimination that is actionable under Title VII." Ethnic Emps. of Library of Congress v. Boorstin, 751 F.2d 1405, 1415 (D.C. Cir. 1985). As a general rule, then, "where a plaintiff alleges facts that are actionable under Title VII and for which Title VII provides a remedy, Title VII preempts virtually all other federal causes of action . . . ." Rochon v. FBI, 691 F. Supp. 1548, 1555 (D.D.C. 1988). Consequently, even assuming that Plaintiff is

---

[3](...continued)
engaging in these activities.

correct that Defendants' actions exceededed the scope of their employment, Title VII preemption would still be applicable as long as Plaintiff's constitutional claims are ones that are actionable under Title VII and for which Title VII provides a remedy.

As the Court previously held in this case, the claims underlying Plaintiff's <u>Bivens</u> action against the individually sued Defendants represent "the very same claims that form the basis of plaintiff's Title VII claims . . . . [and] for which Title VII provides the exclusive remedy." April 28, 2010 Mem. Op. 16 (internal quotations and citation omitted). This conclusion is not altered by Plaintiff's "new evidence" and new theory, which arises from the same factual predicate as her Title VII claims.[4] As a

---

[4] In her Motion for Reconsideration, Plaintiff again raises her alternative argument, originally presented during briefing on the Motion to Dismiss, that her <u>Bivens</u> claim is separate and distinct from her Title VII claims and is, therefore, not preempted. Plaintiff's Mot. 13-15. Although conceding that her Title VII and non-Title VII claims arise from a "common nucleus of operative facts," Plaintiff argues that, based upon new evidence, her <u>Bivens</u> claim should go forward as it "implicate[s] rights not protected by Title VII and harms not remedied by Title VII." <u>Id.</u> at 13-14. While it is true that Title VII does not preempt constitutional claims for which it provides no protection, <u>Ethnic Emps. of Library of Congress</u>, 751 F.2d at 1415-16, Plaintiff fails to demonstrate that her new evidence implicates constitutional rights that are distinct from her Title VII employment discrimination claims. <u>See</u> <u>id.</u> (dismissing those constitutional claims restating allegations of discrimination or retaliation cognizable under Title VII, while permitting alleged constitutional violations not cognizable under Title VII to go forward); <u>Rochon</u>, 691 F. Supp. at 1556 (dismissing, as preempted by Title VII, <u>Bivens</u> claims that were based upon plaintiff's "right to be free from discriminatory treatment with respect to the terms and conditions of his employment"). Instead, much of Plaintiff's argument amounts
(continued...)

result, Brown makes clear that Plaintiff's Bivens action remains presumptively preempted by Title VII, regardless of whether the individually sued Defendants did in fact exceed the scope of their employment.[5]

---

[4](...continued)
to little more than a re-litigation of the issue, which is impermissible on a "'motion to reconsider [as] [it] is simply not an opportunity to reargue facts and theories upon which [the] court has already ruled.'" Aliotta v. Blair, 623 F. Supp. 2d 73, 75 (D.D.C. 2009) (quoting State of New York v. United States, 880 F. Supp. 37, 38 (D.D.C. 1995)), aff'd, 614 F.3d 556 (D.C. Cir. 2010).

The only new material fact or theory presented by Plaintiff is her allegation that the individual Defendants violated two criminal statutes, 18 U.S.C. § 1001, which prohibit false or fraudulent statements in "any matter within the jurisdiction" of the federal government, and 18 U.S.C. § 372, which prohibits conspiracies to impede or injure a federal officer). Plaintiff's Mot. 8, 14. However, as the Government correctly notes, this allegation cannot support Plaintiff's position that her Bivens action is separate and distinct from her Title VII claims. Defendants' Opposition to Plaintiff's Motion for Reconsideration, 5-7 (June 21, 2010) (Gov't Opp'n) [Dkt. No 37]. First, because the factual predicate for this new allegation was contained in her Amended Complaint, Plaintiff should have raised this claim during briefing on Defendants' Motion to Dismiss and cannot now present it here. Second, even if this allegation was properly raised in a motion for reconsideration, Plaintiff has provided no authority establishing that a Bivens claim can be based upon violations of federal criminal statutes, such as these, for which there is no private cause of action. See Peavey v. Holder 657 F. Supp. 2d 180, 190 (D.D.C. 2009) (holding that there is no private cause of action under 18 U.S.C. § 1001), aff'd, 2010 WL 3155823 (D.C. Cir. Aug. 9, 2010); Potts v. Howard Univ. Hosp., 598 F. Supp. 2d 36, 39 n.3 (D.D.C. 2009)(holding that there is no private cause of action under 18 U.S.C. § 372).

[5] While a Bivens claim that is actionable under Title VII is preempted by the statute, our Court of Appeals has recognized that nothing in Title VII's legislative history "even remotely suggests that Congress intended to prevent federal employees from suing their employers for constitutional violations against which Title VII provides no protection at all." Ethnic Emps. of Library of
(continued...)

Second, even if Title VII did not preempt Plaintiff's <u>Bivens</u> claim, the Civil Service Reform Act ("CSRA") would preclude a <u>Bivens</u> remedy in this case. As the Court held in its April 28, 2010 Memorandum Opinion, the CSRA is a special factor counseling against the recognition of Plaintiff's <u>Bivens</u> action. April 28, 2010 Mem. Op. 20.

The Supreme Court has made very clear that where an "elaborate remedial system," has been established by Congress it represents a special factor counseling hesitation and, in such cases, the judiciary should decline to exercise its discretion in creating damages remedies against federal officials in their individual capacity. <u>Bush v. Lucas</u>, 462 U.S. 367, 388-90, 103 S. Ct. 2404 (1983). In <u>United States v. Fausto</u>, 484 U.S. 439, 455, 108 S. Ct. 668 (1988), the Supreme Court squarely held that the CSRA represents precisely such a comprehensive system for "reviewing personnel actions taken against federal employees."

Based upon these precedents, our Court of Appeals has concluded that "'special factors' preclude the creation of a <u>Bivens</u>

---

[5](...continued)
<u>Congress</u>, 751 F.2d at 1415. Consequently, where federal employees bring <u>Bivens</u> claims against their employers that are not covered by Title VII, "Congress did not intend for Title VII to displace those claims . . . ." <u>Id.</u> at 1416. <u>See</u> <u>Rochon</u>, 691 F. Supp. at 1555 ("<u>Brown</u> stands for the proposition that Title VII preempts other remedies for discrimination in federal employment <u>only</u> when the federal employee is challenging action directly and singularly related to discrimination in the terms and conditions of his or her employment.") (emphasis in original).

-10-

remedy for civil service employees . . . who advance constitutional challenges to federal personnel actions [covered by the CSRA]," even when the CSRA affords "'no remedy whatsoever'" to plaintiff. Spagnola v. Mathis, 859 F.2d 223, 228, 230 (D.C. Cir. 1988) (en banc)(citations omitted).

Attempting to avoid these holdings, Plaintiff argues that her Bivens claim should go forward as she is "an excepted civil servant . . . not covered by the protections offered . . . under the CSRA." Plaintiff's Mot. 11. Although she seeks to distinguish the circumstances of her case from Fausto and Spagnola, Plaintiff's Reply 6-9, those cases involve situations substantially similar to Plaintiff's[6] and directly rebut her claim that the preclusive effect of the CSRA is inapplicable.

As noted in Spagnola, the Supreme Court has made clear that "it is the comprehensiveness of the statutory scheme involved, not the 'adequacy' of specific remedies extended thereunder, that counsels judicial abstention [under Bivens special factor

---

[6] In Fausto, the Supreme Court held that a federal employee who, like Plaintiff, was a part of the excepted civil service, was precluded from bringing a judicial action challenging a personnel decision covered by the CSRA even though that employee was personally ineligible to seek CSRA review. 484 U.S. at 455. Similarly, in Spagnola, our Court of Appeals directly addressed whether the CSRA precluded Bivens claims brought by federal employees, who were barred from taking advantage of the CSRA's "elaborate administrative protections" and whose remedies under the CSRA were therefore "not so complete." 859 F.2d at 225-26. The court ultimately held that the CSRA remained preclusive in such circumstances. Id. at 226-29.

analysis]." 859 F.2d at 227 (citing to Schweiker v. Chilicky, 487 U.S. 412, 422, 108 S. Ct. 2460 (1988)). In accordance with this principle, the relevant inquiry for determining whether the CSRA precludes a federal employee's constitutional claims is whether the action being challenged is cognizable under the CSRA as a "personnel action." Id. at 229. Where this is the case, "a case-by-case examination of the particular administrative remedies available to a given plaintiff [is] unnecessary." Id. at 228.

As detailed in the Court's April 28, 2010 Memorandum Opinion, Plaintiff's constitutional claims against the individual Defendants, which challenge their "decisions to transfer [her] to an allegedly inferior position and to restrict her responsibilities," qualify as "personnel actions" covered by the CSRA. April 28, 2010 Mem. Op. 20. Consequently, because the CSRA applies to Plaintiff's challenged actions, she is precluded from seeking judicial relief under Bivens even though she is an excepted civil servant for whom the CSRA affords no remedy. Fausto, 484 U.S. at 455 (holding that CSRA's "deliberate exclusion of employees in respondent's service category from the provisions establishing administrative and judicial review for personnel action" prevented respondent from seeking review in federal court); Id. at 448-49 (holding that the absence of certain types of relief in the CSRA for excepted civil servants "is not an uninformative consequence of the limited scope of the statute, but rather [the] manifestation of

a considered congressional judgment that [excepted civil servants] should not have statutory entitlement to review for [certain] adverse action[s] . . . .").

For the foregoing reasons, the Court **denies** Plaintiff's Motion for Reconsideration based upon her claims relating to Title VII preemption of her Bivens action.

### B. Plaintiff Is Not Entitled to Discovery from Defendants in Their Individual Capacity

With regard to her discovery-related claim, Plaintiff argues that dismissal of the individually sued Defendants should be reconsidered on the grounds that her opportunity to take discovery from them would be circumscribed by their removal from the case. Plaintiff's Mot. 9-10. In response, the Government has represented that Plaintiff "is fully entitled to depose each individually sued defendant and to serve the agency with discovery requests that seek information about what each individually sued defendant did, or did not do, with respect to plaintiff and the claims asserted in this case." Gov't Opp'n 7-8.

In light of the Government's representations that it will allow Plaintiff to take full discovery from Defendants, even though they are sued in their official capacity, as well as Plaintiff's failure to demonstrate any prejudice from such discovery, the Court **denies** Plaintiff's Motion for Reconsideration on the basis of this

claim.[7]

**III. CONCLUSION**

For the reasons set forth above, the Court **denies** Plaintiff's Motion for Reconsideration under Federal Rules of Civil Procedure 59(e) and 60(b). An Order will accompany this Memorandum Opinion.

May 11, 2011

/s/
Gladys Kessler
United States District Judge

**Copies via ECF to all counsel of record**

---

[7] In fact, it is clear that Plaintiff would not be prejudiced by the discovery plan offered by the Government. The Court has already ruled that Plaintiff's Bivens claim is barred. Consequently, she has no basis for seeking this type of discovery and there are no further grounds suggested by Plaintiff for taking discovery of Defendants in their individual capacity.